IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10CV249

| | | |
|---|---|---|
| NORTHWESTERN NATIONAL INSURANCE CO. OF WISCONSIN, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| FMC CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court upon the Defendant's Motion to Dismiss (D.E. 21), the Defendant's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment (D.E. 26), as well as the Plaintiff's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment (D.E. 28). These motions have all been fully briefed and this matter is now ripe for disposition.

**I. FACTUAL BACKGROUND**

In the 1980s, Lithium Corporation of America ("Lithium") operated a manufacturing facility in Bessemer City, North Carolina. Lithium was a subsidiary of Gulf Resources & Chemical Corporation ("Gulf Resources"). In 1980, Plaintiff Northwestern entered into a contract with Gulf Resources to provide workers' compensation insurance to Gulf Resources and its subsidiaries, including Lithium. Gulf Resources sought reinsurance of the Northwestern policies through Vanguard Insurance Company, Ltd. ("Vanguard"). Vanguard was a Bermuda company and a subsidiary of Gulf Resources. Through the execution of the reinsurance

1

agreement, Vanguard agreed to reinsure any liabilities Northwestern might incur with regard to the policies, including any obligations related to any claims which may arise from employers at the Lithium plant. Thus, if Northwestern ever made payment on any claim under these policies, Vanguard agreed to reimburse Northwestern for any monies paid out.

To further insulate Northwestern, Gulf Resources and Northwestern entered into a Hold Harmless Agreement whereby Gulf Resources agreed to indemnify Northwestern for any claims losses in the event that Vanguard defaulted in its obligation to reimburse Northwestern. Pursuant to the Hold Harmless Agreement, Gulf Resources agreed:

> Fully to indemnify, hold harmless and defend the said Northwestern National Insurance Company or any or all of its parent, subsidiary or associated companies against any claim or claims or judgements (sic) including any claim or claims for return of premium from any Third Party or Parties, in the event that Vanguard Insurance Company shall default in its obligations as reinsured (sic) of the Northwestern National Insurance Company or any or all of its subsidiary or associated companies.

Lithium was not a party to the Hold Harmless Agreement either by name or reference.

In 1985, the Defendant FMC Corporation ("FMC") entered into an asset purchase agreement ("PSA") with Gulf Resources and Lithium whereby FMC purchased the assets of Lithium. On the day of closing, Gulf Resources removed Lithium from its insurance coverage with the Plaintiff. FMC secured its own insurance for Lithium and did not enter into any contractual relationship with the Plaintiff. Since the acquisition, FMC has owned and operated Lithium as the FMC Lithium Division.

The PSA provided as follows:

> <u>Assumption of Liabilities and Obligations</u>. In addition to paying the Purchase Price, effective as of the Closing Date, Buyer hereby agrees to assume, pay, perform, discharge and to indemnify and hold harmless Gulf and Seller from and against all obligations and liabilities of every kind and description, whether

2

>   accrued, absolute, fixed, contingent or otherwise, of Seller other than the following liabilities and obligations:
>   ****
>
>> (f) any obligation or liability of Gulf or Seller based on acts or omissions prior to the Closing Date to the extent that such obligation or liability is effectively covered by Gulf's or Seller's insurance as it existed prior to Closing. Buyer acknowledges that Seller's insurance policies contain pollution exclusions.

(PSA, ¶ 1.5).

The "Buyer" is defined in the PSA as FMC and the "Seller" is defined as Lithium. The PSA also expressly limits the scope of its rights and benefits to "the parties hereto and their respective successors and assigns. Nothing in this Agreement, expressed or implied, is intended to confer on any other person other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement." *(Id.*, ¶ 9.9). Finally, the PSA included a choice-of-law provision that stated that the PSA will "be governed by, and construed in accordance with, the laws of the State of Texas." (*Id.*, ¶ 9.17).

In 2004, Northwestern began to incur claims losses related to asbestos workers' compensation claims filed by employees who worked at Lithium's Bessemer City facility.[1] Northwestern sought reimbursement from Vanguard pursuant to the Reinsurance Agreement, but discovered that Vanguard had been dissolved by the Bermuda government, and that Gulf Resources had been liquidated in bankruptcy. Because Plaintiff's purported reinsurer and indemnifier were both insolvent, Plaintiff determined that it was responsible for the defense costs and any settlement payments made in the course of fulfilling its contractual obligations under the

---

[1] With occupational illnesses like asbestosis, North Carolina law provides that the workers' compensation insurance carrier on the last day of exposure bears the risk, but all carriers who provided coverage during the entirety of the employee's employment and possible exposure must appear in and defend the claim until such time as it is determined that they are not the responsible carrier. *See* N.C. Gen. Stat. § 97-57.

3

insurance policies.

Northwestern alleges that in 2009 it discovered FMC had purchased Lithium[2] and tendered a request for indemnity to FMC under the Hold Harmless Agreement. FMC rejected Plaintiff's tender. Northwestern filed this lawsuit against FMC on April 23, 2010, seeking a declaratory judgment (First Cause of Action), and asserting two causes of action: breach of contract (Second Cause of Action) and breach of contract as to third-party beneficiary (Third Cause of Action). The gravaman of Plaintiff's claims is that FMC assumed the contractual obligations of Gulf Resources in the PSA with regard to the Hold Harmless Agreement and must therefore indemnify Plaintiff for its claim losses. FMC has moved to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6), but has moved in the alternative for summary judgment as to all the claims. Plaintiff has likewise moved for summary judgment in its favor, or in the alternative, for partial summary judgment.

**II. DISCUSSION**

In determining whether to grant a motion to dismiss for failure to state a claim, courts may consider documents that are integral to and explicitly relied on in the complaint without converting the motion to one for summary judgment. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In considering the motion to dismiss herein, the court is relying upon the PSA, which is explicitly referred to in the Amended Complaint. Plaintiff argues that it was unable to rely upon the entire PSA in drafting the Amended Complaint, as it only possessed a redacted version of the PSA provided by the Defendant. Plaintiff asserts that since the court must rely on the PSA in its entirety, this motion should be converted to one for summary judgment.

---

[2] FMC vigorously contests that Northwestern was not aware of the sale of Lithium to FMC until 2009.

The court disagrees. However, even if the court converted Defendant's motion to dismiss into a motion for summary judgment, the outcome of this case would not change.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, the court need not accept legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments. *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Moreover, "[t]hreadbare recitals of the elements of a case of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. *Ashcroft*, 129 S.Ct. at 1942.

Plaintiff's claims are all dependent upon its contention that FMC assumed Gulf Resources' obligations to the Plaintiff in the PSA. It appears to the court that this pivotal issue is a matter of contract interpretation. The parties agree that the PSA is an unambiguous contract to be interpreted by the court. As such, this issue is a question of law, not fact. *Wachovia Mortg. Co. v. Autry-Barker-Spurrier Real Estates, Inc.*, 39 N.C. App. 1, 7, 249 S.E. 2d 727, 731 (1978), aff'd 297 N.C. 696, 256 S.E.2d 688 (1979).

The PSA contains a choice-of-law provision that requires that the laws of the State of Texas apply to any dispute concerning the PSA. When a contract contains an express choice-of-law provision, such contractual provision will be given effect. *Tanglewood Land. Co., Inc. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Accordingly, the Court will apply Texas law in interpreting the PSA.

Texas law has consistently rejected any form of implied successor liability. *Ford Bacon & Davis, L.L.C. v. Travelers Ins. Co.*, 635 F.3d 734, 735 (5th Cir. 2011) (*citing Keller*

*Foundations, Inc. v. Wausau Underwriters Ins. Co.*, 626 F.3d 871 (5th Cir. 2010)). Under Texas law, "the purchase of all or substantially all of the property or assets of the seller corporation does not make the acquiring entity responsible or liable for any liability or obligation of the seller corporation *unless the acquiring entity expressly assumes the liability or obligation,* or unless another statutes provides to the contrary." *Sitaram v. Aetna U.S. Healthcare of North Texas, Inc.*, 152 S.W.3d 817, 826 (internal citations removed) (emphasis in the original). Thus, unless a buyer explicitly contracts to acquire the seller's liability, there is no transfer of that liability.

The court must therefore look to the terms of the PSA to determine whether FMC expressly acquired Gulf Resources' obligations to Northwestern. The PSA provides, in pertinent part:

> <u>Assumption of Liabilities and Obligations</u>. In addition to paying the Purchase Price, effective as of the Closing Date, Buyer hereby *agrees to assume*, pay, perform, discharge and to indemnify and hold harmless Gulf and Seller from and against *all obligations and liabilities* of every kind and description, whether accrued, absolute, fixed, contingent or otherwise, *of Seller* other than the following liabilities and obligations:
> ****
>> (f) any obligation or liability of Gulf or Seller based on acts or omissions prior to the Closing Date to the extent that such obligation or liability is effectively covered by Gulf's or Seller's insurance as it existed prior to Closing. Buyer acknowledges that Seller's insurance policies contain pollution exclusions.

(PSA, ¶ 1.5) (emphasis added).

The court finds that the terms of the PSA are clear and unambiguous. FMC acquired the obligations and liabilities of Lithium, the Seller. FMC did not acquire the obligations of Gulf Resources. The Hold Harmless Agreement is an obligation of Gulf Resources. The Plaintiff would have the court rewrite paragraph 1.5 of the PSA to read: "obligations and liabilities of every kind and description, whether accrued, absolute, fixed, contingent or otherwise, of GULF

6

…" in contravention of Texas law. This Court must enforce the unambiguous PSA as written. *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965) ("Where the terms of [a contract] are plain, definite and unambiguous, the courts cannot vary these terms.").

Moreover, even if Gulf Resources' liabilities were somehow included as the liabilities of the Seller (Lithium), such pre-closing liabilities are specifically excluded in Section 1.5(f), as the workers' compensation claims for which Plaintiff is seeking indemnification were covered by insurance provided by the Plaintiff and in effect prior to closing. Therefore, not only were these liabilities not explicitly assumed, as required by Texas law, they were explicitly excluded.

*Even if FMC did* assume the obligations of Gulf Resources and those obligations were not expressly excluded, Plaintiff's claims must still fail because Plaintiff's theory rests on its ability to enforce the PSA against FMC. Plaintiff is not a party to the PSA. To have standing to bring a suit for breach of contract, the plaintiff must either be in privity of contract with the defendant[3] or be a third-party beneficiary entitled to enforce the contract. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village., L.P.*, 234 S.W.3d 726, 738 (Tex. App. 2007). Plaintiff lacks privity, therefore the only way Plaintiff could feasibly sue FMC is through a breach of contract claim as a third-party beneficiary. Texas has adopted the analysis of the Restatement (Second) of Contracts to determine whether a plaintiff is an intended third-party beneficiary of a contract made by others. *See Stine v. Stewart,* 80 S.W.3d 586 (Tex. 2002). Section 302 of the Restatement (Second) provides:

**§ 302. Intended and Incidental Beneficiaries**

---

[3] To the extent that Plaintiff is seeking to sue Defendant for breach of the Hold Harmless Agreement, this claim must likewise fail for the reason that Plaintiff cannot meet the most fundamental requirement of a breach of contract claim, as there is no contract between FMC and the Plaintiff.

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1981). Beneficiaries covered by subsection (1)(a) are generally referred to as "creditor beneficiaries" while those covered by subsection (1)(b) are known as "donee beneficiaries." *Id.* at 80 S.W.3d 589. Plaintiff contends that it is a creditor beneficiary to the PSA and therefore has standing to sue for breach of the PSA.

Under Texas law, it is well-settled that the fact that a third party may receive a benefit from a contract to which it is not a party does not give that third party the right to bring action under the contract. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Moreover, the court cannot create a third-party beneficiary contract by implication. *Id.* Rather, "[t]he intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* The Texas Supreme Court recently reconfirmed that a third party may only enforce a contract when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (citing *MCI*, 995 S.W.2d at 651). The Court explained, "in the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication." *Id.* Further, "[a]ll doubts must be resolved against conferring third-party beneficiary status." *Id.*

The PSA clearly states in Section 9.9 that "[n]othing in this Agreement, expressed or implied, is intended to confer on any other person other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement." (PSA, ¶ 9.9). *See MCI,* 995 S.W.2d at 651 (holding that provision in a contract that explicitly stated no benefits were conferred to non-signatories was clear and unambiguous). Accordingly, Plaintiff is expressly precluded from being a third-party beneficiary to the PSA under Texas law.

Because the court has found that Plaintiff has failed to state a plausible claim that FMC assumed the obligations of Gulf Resources in the PSA, the court need not address the arguments presented in Defendant's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment (D.E. 26).

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (D.E. 21) is hereby GRANTED;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgement, or in the Alternative, for Partial Summary Judgment (D.E. 26) is hereby DENIED AS MOOT; and Plaintiff's Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment (D.E. 28), is hereby DENIED.

Signed: February 29, 2012

Graham C. Mullen
United States District Judge